UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD SCARANTINO, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| NORTHSTAR REALTY EUROPE CORP., RICHARD B. SALTZMAN, MAHBOD NIA, MARIO CHISHOLM, THOMAS J. BARRACK, JR., JUDITH A. HANNAWAY, DIANE HURLEY, OSCAR JUNQUERA, WESLEY D. MINAMI, NORTHSTAR REALTY EUROPE LIMITED PARTNERSHIP, NIGHTHAWK MERGER SUB LLC, NIGHTHAWK PARTNERSHIP MERGER SUB LLC, and CORE PANEURO 2019 13 S.À.R.L., | ) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 3, 2019 (the "Proposed Transaction"), pursuant to which NorthStar Realty Europe Corp. ("NorthStar" or the "Company") will be acquired by affiliates of AXA Investment Mangers - Real Assets.

2. On July 3, 2019, NorthStar's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with NorthStar Realty Europe Limited Partnership, a Delaware limited partnership, Nighthawk Merger Sub LLC, a Delaware limited liability company, Nighthawk Partnership

Merger Sub LLC, and CoRE PANEURO 2019 13 S.à.r.l. (collectively, the "Buyer Parties"). Pursuant to the terms of the Merger Agreement, NorthStar stockholders will receive $1.68 and the U.S. Dollar equivalent of €9.26 and £3.82 in cash for each share of NorthStar common stock they own.

3. On August 14, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for September 25, 2019.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of NorthStar common stock.

9. Defendant NorthStar is a Maryland corporation and a party to the Merger Agreement. NorthStar's common stock is traded on the New York Stock Exchange under the ticker symbol "NRE."

10. Defendant Richard B. Saltzman is Chairman of the Board of the Company.

11. Defendant Mahbod Nia is President, Chief Executive Officer and a director of the Company.

12. Defendant Mario Chisholm is a director of the Company.

13. Defendant Thomas J. Barrack, Jr. is a director of the Company.

14. Defendant Judith A. Hannaway is a director of the Company.

15. Defendant Dianne Hurley is a director of the Company.

16. Defendant Oscar Junquera is a director of the Company.

17. Defendant Wesley D. Minami is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant NorthStar Realty Europe Limited Partnership is a Delaware limited partnership and a party to the Merger Agreement.

20. Defendant Nighthawk Partnership Merger Sub LLC is a Delaware limited liability company and a party to the Merger Agreement.

21. Defendant Nighthawk Merger Sub LLC is a Maryland limited liability company and a party to the Merger Agreement.

22. Defendant CoRE PANEURO 2019 13 S.à.r.l. is a Luxembourg S.à.r.l. and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of NorthStar stock (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of July 3, 2019, there were approximately 50,289,639 shares of NorthStar common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i) whether the Individual Defendants have violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would

substantially impair or impede those non-party Class members' ability to protect their interests.

29. Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30. NorthStar is a European-focused commercial real estate company with predominantly high quality office properties in Germany, the United Kingdom, and France.

31. The Company is organized as a REIT and managed by an affiliate of Colony Capital, Inc., a leading global real estate and investment management firm.

32. On July 3, 2019, NorthStar's Board caused the Company to enter into the Merger Agreement with the Buyer Parties.

33. Pursuant to the terms of the Merger Agreement, NorthStar stockholders will receive $1.68 and the U.S. Dollar equivalent of €9.26 and £3.82 in cash for each share of NorthStar common stock they own.

34. According to the press release announcing the Proposed Transaction:

> NorthStar Realty Europe Corp. (NYSE: NRE) (the "Company" or "NRE") today announced that following a comprehensive strategic review it has entered into a definitive merger agreement with AXA Investment Managers - Real Assets ("AXA IM - Real Assets"), a global leader in real asset investments, acting on behalf of a client, for the acquisition of all of the outstanding shares of common stock of the Company. The estimated per share merger consideration of US$17.03 is based on the three-month forward foreign exchange rates and represents a 16.4% premium to the Company's unaffected closing stock price of US$14.63 on November 6, 2018, the last reporting day before NRE announced its strategic review process. Since NorthStar Realty Europe completed its spin-off on November 2, 2015, stockholders will realize an approximate 16% IRR on their investment assuming the estimated per share merger consideration of US$17.03.
>
> The estimated merger consideration reflects a gross asset value for the Company's assets in line with the Company's most recently reported independent portfolio

5

valuation(ii) by Cushman & Wakefield LLP, which was reflected in the March 31, 2019 EPRA(iii). EPRA Net Asset Value ("EPRA NAV") per share. The Company's March 31, 2019 EPRA NAV per share of US$20.48 per share is reduced to reflect (i) approximately $1.54 per share related to the remaining portion of the termination payment to our external manager and transaction related costs, (ii) approximately $0.21 per share related to the issuance of annual compensation and retention shares subsequent to March 31, 2019 (iii) approximately $0.57 per share related to the accelerated vesting of performance shares in connection with the Merger, (iv) approximately $0.13 per share related to currency changes since March 31, 2019, (v) approximately $0.23 per share due to dividends net of projected cash flows, and (vi) approximately $0.58 per share related to local jurisdiction latent capital gains taxes and net working capital adjustments. Pro forma for these adjustments and assuming a transaction close at September 30, 2019, the Company's Adjusted EPRA NAV per share is approximately US$17.22. For more information and a reconciliation of the Company's March 31, 2019 EPRA NAV, please refer to the tables on the following pages.

Under the terms of the merger agreement, NRE stockholders will receive in cash at closing, for each share of common stock, US$1.68 plus the U.S. Dollar equivalent of €9.26 and £3.82, representing an estimated per share merger consideration of US$17.03 based on three month forward foreign exchange rates(iv). This reflects the geographic location of assets across the U.K., France and Germany. Based on spot foreign exchange rates of 1.1290 EUR/USD and 1.2595 GBP/USD as of July 2, 2019, per Bloomberg, the estimated per share merger consideration is US$16.95 per share, implying a 15.8% premium to the Company's unaffected closing stock price.

In connection with the transaction, NRE has entered into six-month forward contracts for the purchase of U.S. Dollars for €482 million and £199 million, the approximate aggregate amount of the merger consideration denominated in Euros and Pound Sterling. In connection with the closing of the merger, these forward contracts will be settled and the portion of the merger consideration denominated in Euro and Pound Sterling will be paid to NRE stockholders in U.S. Dollars reflecting the final exchange rate received in settlement of the forward contracts (which may be at rates greater or less than the currently estimated exchange rates, depending on the closing date).  Assuming an early fourth quarter 2019 closing, stockholders are expected to receive the equivalent of the three month forward foreign exchange rate consideration of US$17.03 with an additional nominal adjustment to proceeds to account for the interest rate differential from the period of original settlement date to the closing date. . . .

The Client of AXA IM -- Real Assets will finance the transaction through the arrangement of equity financing and the Company's available cash at closing. The transaction is not subject to any financing condition.

> Pursuant to the merger agreement executed by the parties, the closing of the transaction is subject to customary closing conditions, including approval by a majority of the Company's stockholders. The closing is expected to occur in the fourth quarter of 2019, subject to satisfaction of all closing conditions. Prior to closing, NRE expects to pay its final quarterly dividend of $0.15 per share in August 2019. . . .
>
> Advisors
> The Strategic Review Committee is being advised by Goldman Sachs & Co. LLC and is receiving legal counsel from Fried, Frank, Harris, Shriver & Jacobson LLP. The Company is receiving legal counsel from Sullivan & Cromwell LLP, Clifford Chance LLP and Venable LLP, compensation and benefits counsel from Goodwin Procter LLP and tax counsel from Vinson & Elkins LLP.
>
> AXA IM -- Real Assets is being advised by Deutsche Bank Securities Inc. and is receiving legal counsel from DLA Piper LLP. In addition, KPMG provided accounting, financial, and tax due diligence advisory services and CBRE provided real estate advisory services.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

35. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for September 25, 2019.

36. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

37. First, the Proxy Statement omits material information regarding the Company's financial projections.

38. The Proxy Statement fails to disclose: (i) all line items used to calculate (a) Property NOI, (b) EBITDA, (c) FFO, (d) AFFO, (e) CAD, and (f) levered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

39. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion.

40. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

41. With respect to Goldman's Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates used by Goldman in the analysis; (ii) the Company's NAV per share for each of the fiscal years ending December 31, 2019, 2020, 2021, and 2022; and (iii) the estimated dividends used by Goldman in the analysis.

42. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 6.0% to 7.0% and the perpetuity growth rates ranging from 1.0% to 2.0%; (ii) all line items used to calculate levered free cash flow; (iii) the range of illustrative terminal values for the Company; and (iv) the number of outstanding shares of Company common stock on a fully diluted basis.

43. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. Third, the Proxy Statement omits material information regarding potential conflicts of interest of Goldman.

45. The Proxy Statement fails to disclose the amount of Goldman's compensation that is contingent upon consummation of the Proposed Transaction.

46. The Proxy Statement also fails to disclose the timing and nature of the past services Goldman provided to the Company and its affiliates.

47. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Mergers; (ii) Reasons for the Mergers; (iii) Opinion of the Financial Advisor to the SRC; and (iv) Certain NRE Forecasts.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NorthStar**

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. NorthStar is liable as the issuer of these statements.

52. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

9

53. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Buyer Parties

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and the Buyer Parties acted as controlling persons of NorthStar within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of NorthStar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and the Buyer Parties was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

62. By virtue of the foregoing, the Individual Defendants and the Buyer Parties violated Section 20(a) of the 1934 Act.

63. As set forth above, the Individual Defendants and the Buyer Parties had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 28, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*